## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL RUBIN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| ASB BANCORP, INC., SUZANNE S. DEFERIE, PATRICIA S. SMITH, JOHN B. GOULD, JOHN B. DICKSON, LESLIE D. GREEN, KENNETH E. HORNOWSKI, STEPHEN P. MILLER, LAWRENCE B. SEIDMAN, ALISON J. SMITH, WYATT S. STEVENS, and KENNETH J. WRENCH, | ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) ) ) | |

Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of ASB Bancorp, Inc. ("ASBB" or the "Company") against ASBB and the members of ASBB's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of their attempt to sell the Company to First Bancorp (the "Proposed Transaction").

2.      On May 1, 2017, ASBB issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with First Bancorp. Under the terms of

1

the Merger Agreement, for each share of common stock they own, ASBB stockholders will receive (i) 1.44 shares of First Bancorp common stock; or (ii) $41.90 in cash, without interest; or (iii) a combination of (i) and (ii); provided, that the total merger consideration will be prorated as necessary to ensure that 10% of the total outstanding shares of ASBB common stock will be exchanged for cash and 90% of the total outstanding shares of ASBB common stock will be exchanged for shares of First Bancorp common stock; provided further, that the number of shares of First Bancorp common stock to be issued may not exceed 19.9% of the number of shares of First Bancorp common stock outstanding immediately before the effective time of the merger, and to the extent the total number of shares of First Bancorp common stock would exceed 19.9%, the foregoing proration of the total merger consideration will be appropriately adjusted. The Proposed Transaction is valued at approximately $175 million.

3. On June 28, 2017, First Bancorp and ASBB filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement, which recommends that ASBB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections, relied upon by ASBB's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in its financial analyses; (ii) the valuation analyses prepared by KBW in connection with the rendering of its fairness opinion; (iii) the background process leading up to the Proposed Transaction; and (iv) KBW's conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as ASBB stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. In short, unless remedied, ASBB's public stockholders will be forced to make a

voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. ASBB is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ASBB common stock.

9. ASBB is a North Carolina corporation and maintains its principal executive offices located at 11 Church Street, Asheville, North Carolina 28801. ASBB is the holding

company for the Asheville Savings Bank, S.S.B. (the "Bank"). ASBB's common stock is traded on the NASDAQ under the ticker symbol "ASBB."

10.     Defendant Suzanne S. DeFerie ("DeFerie") has been President and Chief Executive Officer ("CEO") of the Bank since January 2008, President and CEO of the Company since 2011, and a director of the Company since 2008.

11.     Defendant Patricia S. Smith ("Smith") is Chairman of the Company and of the Bank's board of directors and has been a director of the Company since 1996.

12.     Defendant John B. Gould ("Gould") is Vice Chairman of the Company and of the Bank's board of directors. Defendant Gould has been a director of the Company since 1997.

13.     Defendant John B. Dickson ("Dickson") has been a director of the Company since 1990 and previously served as President and CEO of the Bank from 1990 to 2007.

14.     Defendant Leslie D. Green ("Green") has been a director of the Company since 1998.

15.     Defendant Kenneth E. Hornowski ("Hornowski") has been a director of the Company since 1998.

16.     Defendant Stephen P. Miller ("Miller") has been a director of the Company since 1999.

17.     Defendant Lawrence B. Seidman ("Seidman") has been a director of the Company since February 2016.

18.     Defendant Alison J. Smith ("Smith") has been a director of the Company since September 2014.

19.     Defendant Wyatt S. Stevens ("Stevens") has been a director of the Company since 2004.

4

20.     Defendant Kenneth J. Wrench ("Wrench") has been a director of the Company since February 2016.

21.     The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     First Bancorp is a North Carolina corporation, with its principal executive offices located at 300 SW Broad Street, Southern Pines, North Carolina 28387.

23.     The Bank is a North Carolina chartered savings bank founded in 1936 and headquartered in Asheville, North Carolina.

24.     First Bank is a North Carolina chartered bank with its main office in Southern Pines, North Carolina. First Bancorp is the bank holding company for First Bank.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own ASBB common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 1, 2017, there were approximately 3,788,025 shares of ASBB common stock outstanding. All members of the Class may be identified from records maintained by ASBB or its

5

transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

31.     ASBB was incorporated in May 2011 to be the holding company for the Bank, upon completion of the Bank's conversion from the mutual to the stock form of ownership on

6

October 11, 2011. The Company's principal activity is ownership of the Bank's outstanding shares of common stock. The Bank operates as a community-oriented financial institution offering traditional financial services to consumers and businesses. ASBB attracts deposits from the general public and uses those funds to originate primarily one-to-four family residential mortgage loans and commercial real estate loans. The Company conducts the Bank's lending and deposit activities primarily with individuals and small businesses.

32.     On April 28, 2017, the Company announced its first quarter of 2017 financial results. For the quarter, ASBB reported net income of $1.8 million, or $0.50 per diluted common share, compared to net income of $1.1 million, or $0.30 per diluted common share for the first quarter of 2016. Earnings for the first quarter of 2017 increased to $1.8 million, compared to $832,000 for the first quarter of 2016. Defendant DeFerie commented on the quarter's positive financial results, stating:

> We began the year with a very strong first quarter thanks to focused and successful execution of our strategic business plan and strong market fundamentals. One of our key priorities has been to establish new relationships with commercial clients and to diversify relationships with existing business clients. During the first quarter, we saw favorable growth in the number of new commercial relationships and a corresponding increase in new core deposit accounts and new loan originations, which exceeded loan repayments, prepayments and foreclosures. Overall, deposit growth was strong.
>
> During the quarter, we improved our funding mix by repaying higher-cost Federal Home Loan Bank advances. This helped lower our cost of funding and contributed to the ongoing expansion of our net interest margin. Asset quality metrics continued to improve and nonperforming loans as a percent of total loans was nine basis points at quarter end.
>
> With a solid business plan, strong capital position and dedicated professionals as our foundation, we expect to continue our momentum and generate attractive returns for our shareholders.

**The Sale Process**

33.     During February 2017, at the direction of the executive committee of the Board,

7

KBW contacted eight potential strategic merger partners. Six of those contacted, including First Bancorp and institutions referred to in the Registration Statement as "Institutions A-E" signed nondisclosure agreements with the Company. The Registration Statement fails to disclose whether the nondisclosure agreements contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

34. Defendant DeFerie subsequently met with Institution A and held several telephone conversations with Institution B and Institution C.

35. On March 16, 2017, First Bancorp and each of Institutions A, B, C, and D submitted preliminary indications of interest. First Bancorp's indication of interest proposed merger consideration of $42.50 to $44.00 per share, or an exchange ratio of 1.41 to 1.46, consisting of 10% cash and 90% First Bancorp common stock. Institution A's indication of interest proposed merger consideration of $42.00 per share, consisting of 100% Institution A common stock. Institution A further indicated it would consider including cash in the consideration mix. Institution B's indication of interest proposed merger consideration of $38.50 to $40.00 per share in a 20% cash and 80% Institution B common stock transaction with a fixed exchange ratio. Institution C's indication of interest proposed merger consideration of $38.25 to $40.25 per share of ASBB common stock in a 100% Institution C common stock transaction. Institution D's indication of interest proposed merger consideration of $38.00 per share in a 100% cash transaction.

36. Following a March 21, 2017 Board meeting, the Board determined to invite First Bancorp, Institution A and Institution B to continue their due diligence and provide a final indication of interest. The Registration Statement fails to provide any details as to why it chose to

8

extend further due diligence to only these parties, excluding Institution C and Institution D.

37.     On March 24, 2017, the Company received a letter from Institution C clarifying its initial indication of interest and proposing merger consideration of $40.25 per share and that it would be willing to consider up to 20% cash consideration. The Registration Statement again fails to disclose the reasons the Board did not invite Institution C to continue with due diligence at this stage of the process.

38.     On April 3 and April 4, 2017, defendant DeFerie and Kirby A. Tyndall ("Tyndall"), ASBB's Executive Vice President and Chief Financial Officer ("CFO"), held conversations with Institution B and First Bancorp, respectively.

39.     On April 12, 2017, First Bancorp and Institution B delivered their final indications of interest to KBW. Institution A advised KBW that it would not submit a final indication of interest. First Bancorp's final indication of interest proposed merger consideration based on a fixed exchange ratio of 1.44 shares of First Bancorp common stock for each share of ASBB common stock, or an implied purchase price of $41.90 per share based on First Bancorp's 30-day average stock price as of April 11, 2017 of $30.11 per share, consisting of 10% cash and 90% First Bancorp common stock, with a limit on the number of shares of First Bancorp common stock to be issued in the merger equal to 19.9% of First Bancorp's outstanding shares immediately prior to the effectiveness of the merger. Institution B's final indication of interest proposed merger consideration of 1.4848 shares of Institution B common stock for each share of ASBB common stock, or $40.00 in cash for each share of ASBB common stock, based on the 10-day average stock price through April 11, 2017, in a 20% cash and 80% common stock transaction.

40.     On April 18, 2017, the Board met to discuss First Bancorp's and Institution B's indications of interest. At the meeting, KBW reported it had been contacted by a senior executive

9

at Institution C regarding Institution C's continued interest in pursuing a potential merger with the Company.

41.     On April 21, 2017, ASBB and First Bancorp executed a 30-day exclusivity agreement.

42.     On April 30, 2017, the Board held a meeting during which KBW rendered its fairness opinion. The Board discussed the terms of the proposed employment agreement that First Bancorp had provided to defendant DeFerie. However, the Registration Statement fails to disclose when First Bancorp first provided the employment agreement to defendant DeFerie. Following discussion, the Board approved the Merger Agreement.

43.     On May 1, 2017, ASBB and First Bancorp executed the Merger Agreement.

**The Proposed Transaction**

44.     On May 1, 2017, First Bancorp and ASBB issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SOUTHERN PINES N.C. and ASHEVILLE, N.C., May 1, 2017 -- First Bancorp (Nasdaq: FBNC), the parent company of First Bank, announced today the signing of a definitive merger agreement under which First Bancorp will acquire ASB Bancorp, Inc. (Nasdaq: ASBB), the parent company of Asheville Savings Bank, SSB, in a cash and stock transaction with a total current value of approximately $175 million, or $43.12 per share based on First Bancorp's closing share price on April 28, 2017. With over $5 billion in pro forma assets and more than 100 branches, this transaction will solidify First Bank's position as the leading community bank in North Carolina.
>
> The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2017 and is subject to customary conditions, including regulatory approvals and approval by ASB Bancorp's shareholders. Subject to the terms of the merger agreement, ASB Bancorp shareholders will receive 1.44 shares of First Bancorp's common stock or $41.90 in cash, or a combination thereof, for each share of ASB Bancorp common stock. The total consideration will be prorated as necessary to ensure that 90% of the total outstanding shares of ASB Bancorp common stock will be exchanged for First Bancorp common stock and 10% of the total outstanding shares of ASB Bancorp common stock will be exchanged for cash, provided that the maximum

number of shares of First Bancorp common stock to be issued in exchange for ASB Bancorp common stock will not exceed 19.9% of the number of shares of First Bancorp common stock issued and outstanding immediately before the closing of the merger.

Asheville Savings Bank currently operates 13 banking locations in the Asheville, Marion and Brevard MSAs. Asheville Savings Bank reported assets of $803 million, gross loans of $606 million and deposits of $682 million as of March 31, 2017. The acquisition complements First Bank's existing three branches in the Asheville market.

"We are very excited to be partnering with Asheville Savings Bank and increasing our footprint in the attractive Asheville market," said Richard Moore, Chief Executive Officer of First Bancorp. "Like First Bank, Asheville Savings Bank was also organized in the mid-1930's and has the same long history of service to its customers, its communities and its shareholders. More importantly, the organizational values of Asheville Savings Bank, and its people, align very well with those of First Bank. We are also pleased that Suzanne S. DeFerie, President & Chief Executive Officer of ASB Bancorp, will join First Bancorp as a board member and in a market leadership capacity."

Upon completion of the acquisition, the combined company will have approximately $5.2 billion in assets, $3.9 billion in loans and $4.3 billion in deposits.

**Insiders' Interests in the Proposed Transaction**

45.     ASBB insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and ASBB's public stockholders.

46.     Notably, defendant DeFerie has secured a position for herself following completion of the Proposed Transaction. According to the Registration Statement, defendant DeFerie will be employed as Regional President – Asheville Region, as well as a First Bancorp director following closing of the merger. The Registration Statement also discloses that "one additional representative of the ASBB Board of Directors, as identified by First Bancorp" will be appointed to the board of First Bancorp and First Bank following consummation of the Proposed

11

Transaction.

47.     Further, if they are terminated in connection with the Proposed Transaction, ASBB's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

### Golden Parachute Compensation

| Name | Cash ($) [1] | Equity ($) [2] | Pension/ NQDC ($) | Perquisites/ Benefits ($) [3] | Tax Reimbursement ($) | Other ($) [4] | Total ($) |
|------|------|--------|---------|------------|--------------|-------|-------|
| Suzanne S. DeFerie | $ 1,329,007 | $ 934,988 | - | - | - | $ 438,352 | $ 2,702,347 |
| Kirby A. Tyndall | $ 722,502 | $ 475,162 | - | $ 28,699 | - | $ 317,501 | $ 1,543,864 |
| David A. Kozak | $ 704,542 | $ 475,162 | - | $ 28,699 | - | $ 339,815 | $ 1,548,218 |
| Vikki D. Bailey | $ 609,897 | $ 271,970 | - | $ 39,515 | - | $ 255,807 | $ 1,177,189 |

### The Registration Statement Contains Material Misstatements and Omissions

48.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to ASBB's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

49.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections, relied upon by ASBB's financial advisor, KBW, in its financial analyses; (ii) the valuation analyses prepared by KBW in connection with the rendering of its fairness opinion; (iii) the background process leading up to the Proposed Transaction; and (iv) KBW's conflicts of interest. Accordingly, ASBB stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning ASBB's Financial Projections***

50.     First, the Registration Statement omits material information regarding the Company's financial projections provided by ASBB's management and relied upon by KBW for its analyses.

51.     For example, the Registration Statement fails to disclose: (i) excess cash flows; (ii) the definition of excess cash flows; and (iii) the line items used to calculate excess cash flows. In addition, although the Registration Statement discloses that "ASBB management provided KBW with a 5% annual net income growth rate assumption for 2020 through 2022 for purposes of the discounted cash flow analysis performed in connection with KBW's fairness opinion" (Registration Statement at 53), the Registration Statement fails to disclose the assumptions provided to KBW to calculate estimated 2023 net income, which KBW utilized in its *ASBB Discounted Cash Flow Analysis*.

52.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: "Certain First Bancorp and ASBB Unaudited Prospective Financial Information."

***Material Omissions Concerning KBW's Financial Analyses***

53.     The Registration Statement describes KBW's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, ASBB's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information

13

available to ASBB's stockholders.

54.     With respect to KBW's *ASBB Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) as mentioned above, the estimated excess cash flows that ASBB could generate over the period from December 31, 2017 through 2022 as a standalone company utilized by KBW in its analysis as well as the definition of excess cash flows and the line items used to calculate excess cash flows; (ii) the Company's estimated 2023 net income used to derive the terminal value as well as how KBW derived the Company's estimated 2023 net income; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%; and (iv) the implied perpetuity growth rate range resulting from this analysis.

55.     With respect to KBW's *ASBB Selected Companies Analysis* and *First Bancorp Selected Companies Analysis*, the Registration Statement fails to disclose the implied range of values per share of the Company resulting from these analyses, as well as the high and low profitability and other financial information for each of the selected companies.

56.     With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the implied range of values per share of the Company resulting from this analysis, as well as the high and low implied transaction statistics derived by KBW for each of the selected transactions.

57.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its

fairness opinion.

58.     The omission of this information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: "Opinion of ASBB's Financial Advisor."

***Material Omissions Concerning the Background Process of the Proposed Transaction***

59.     The Registration Statement fails to disclose or misstates material information regarding the background process leading up to the Proposed Transaction and potential conflicts of interest of ASBB's officers and directors.

60.     The Registration Statement discloses that Institutions A-E executed nondisclosure agreements with ASBB. However, the Registration Statement fails to disclose whether these nondisclosure agreements contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

61.     Disclosure of this information is particularly material to ASBB stockholders as Institution C was shut out of the process and repeatedly denied access to additional due diligence despite having submitted the second-highest indication of interest and repeatedly affirming its continued interest in a merger with ASBB. Whether Institution C is currently precluded from making a topping bid for the Company must be disclosed to ASBB stockholders prior to their voting decision on the Proposed Transaction.

62.     Additionally, the Registration Statement states that at the April 30, 2017 Board meeting, "[t]he ASBB Board of Directors also discussed the terms of the proposed employment agreement that First Bancorp had provided to Ms. DeFerie, and Ms. DeFerie informed that she was prepared to sign the agreement if the Board of Directors determined to enter into the definitive

15

merger agreement." Registration Statement at 37. However, the Registration Statement fails to disclose the timing and nature of all communications regarding defendant DeFerie's future employment and directorship, as well as communications involving future employment and/or directorship of any other ASBB executive officers and directors, including who participated in all such communications. The Registration Statement further fails to disclose whether any of First Bancorp's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

63. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

64. Moreover, the Registration Statement fails to disclose the reasons why the Board excluded Institutions C and D from the process following submission of their initial indications of interest, as well as the reasons the Board continued to exclude Institution C following its March 24, 2017 letter and April 18, 2017 contact with KBW.

65. The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: (i) "Background of the Merger;" (ii) "ASBB's Reasons for the Merger and Recommendation of the ASBB Board of Directors;" and (iii) "Interests of the Directors and Officers of ASBB and Asheville Savings Bank in the Merger."

***Material Omissions Concerning KBW's Conflicts of Interest***

66. Further, the Registration Statement omits material information regarding conflicts

of interest of KBW. Specifically, the Registration Statement fails to disclose the amount of compensation KBW received for acting as "financial advisor to First Bancorp in connection with its acquisition of Carolina Bank Holdings, Inc. that was completed in March 2017." Registration Statement at 50.

67.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

68.     The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following section of the Registration Statement: (i) "Opinion of ASBB's Financial Advisor."

69.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ASBB

70.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in

Case 1:17-cv-00185-MOC-DLH   Document 1   Filed 07/14/17   Page 17 of 21

violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

72. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

73. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

74. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

76. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77. The Individual Defendants acted as controlling persons of ASBB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ASBB and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration

18

Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

80.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein.

By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, ASBB's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of ASBB, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to ASBB stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 14, 2017

Respectfully submitted,

/s/ Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, North Carolina 27401
(336) 510-2104 Direct Dial
(336) 510-2181 Dedicated Facsimile
jwblack@wardblacklaw.com


-and-

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*

21